## JAMES BARRY *v.* POSI-SEAL INTERNATIONAL, INC. (12101)

FOTI, LANDAU and SPEAR, Js.

Argued January 12—decision released September 13, 1994

*Mark R. Kravitz,* with whom were *Ian E. Bjorkman* and, on the brief, *Bonnie L. Patten,* for the appellant-appellee (defendant).

*Harry E. Calmar,* with whom, on the brief, were *Thomas B. Wilson* and *Helen Kemp,* legal intern, for the appellee-appellant (plaintiff).

LANDAU, J. In this action for wrongful termination of employment, the defendant, Posi-Seal International, Inc. (Posi-Seal), appeals from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, James Barry. The defendant challenges the trial court's refusal to set aside the verdict on the following bases: (1) that there was insufficient evidence that an employment contract was created between the parties; (2) that, because an employment contract did not exist, the finding of a breach of an implied covenant of good faith and fair dealing was improper; (3) that front pay is not a proper measure of contract damages,

and, if it is a proper measure, there was insufficient evidence to support the front pay award; and (4) that there was insufficient evidence to support the award of punitive damages. The plaintiff has filed a cross appeal claiming that the trial court improperly (1) set aside the awards for intentional infliction of emotional distress and negligent misrepresentation, and (2) reduced the punitive damage award.

The jury reasonably could have found the following facts. The plaintiff was employed by the defendant for more than ten years as an assembler of specialty valves. On August 4, 1988, the plaintiff walked by an area where a valve test was being conducted. John Burdick, an inspector for the defendant, was witnessing the test. The plaintiff had firsthand knowledge of the effectiveness of the valve being tested. The plaintiff remarked to Burdick that the valve was "fucking junk" and that he was wasting his time testing it. Only after making his comment did the plaintiff notice that Jim Eckhardt, an inspector representing a Posi-Seal customer, was present. The next day, the plaintiff's employment was terminated because of the disparaging remark he had made about a company made valve in the presence of a customer representative. He received no prior notice of this act, nor was he afforded any other disciplinary measures in accordance with the defendant's personnel manual.

The plaintiff commenced this action for damages for wrongful termination of employment alleging breach of an implied or express employment contract, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress and negligent misrepresentation. At trial, the jury answered several special interrogatories and returned a verdict finding the issues in favor of the plaintiff. The finding that an implied employment contract existed between the parties was based on remarks made by Eugene Bisbee and

the express language of the employee manual. Bisbee, the vice president and general manager of Posi-Seal, would walk, on occasion, through the Posi-Seal plant and discuss with employees the financial prospects of the company in an effort to boost morale. Because it was common knowledge that the plant was experiencing severe financial pressures, he tried to dispel the perception that the company was considering closing the plant. On one occasion, the plaintiff inquired as to his job security and Bisbee responded that "if you do your job, you do your work, you're going to have a job here. If we can make this place run and minimize the money loss—I mean, you do your job, you're going to have a job here."

The defendant distributed a personnel policy manual to its employees describing company policy on disciplinary procedures. It states that "[i]t is policy of the Company that any employee who violates any of the rules or procedures of the Company shall be subject to disciplinary action as set forth below." The manual then sets forth procedures to respond to first, second and third violations by employees of the company rules and regulations.

The jury awarded the plaintiff the following damages: $52,275 back pay; $271,775 future wage loss-impairment of earning capacity; $42,315 infliction of emotional distress and negligent misrepresentation; and $50,000 punitive damages. The defendant moved to set aside the verdict. After a hearing on the motion, the trial court granted the motion to set aside the verdict as to intentional infliction of emotional distress and negligent misrepresentation, and denied it as to the remaining counts.[1] The defendant filed this appeal, and the plaintiff filed a cross appeal.

---

[1] The defendant also filed a motion for remittitur. The trial court granted this motion and ordered that the plaintiff file a remittitur accepting a reduction of the punitive damage award to $42,017. The plaintiff filed an acceptance of the remittitur.

# I

## THE DEFENDANT'S APPEAL

### A

The defendant first claims that there was insufficient evidence to support the finding that the parties had an implied agreement whereby the plaintiff's employment could not be terminated except for cause following appropriate disciplinary procedures. The defendant contends that Bisbee's statements and the language of the personnel manual do not constitute sufficient evidence to establish an implied agreement between the parties, and thus, the issue should not have been submitted to the jury. The defendant seeks a judgment in its favor on this claim. We are unpersuaded.

"A contract implied in fact, like an express contract, depends on actual agreement. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 211 n.2, 520 A.2d 217 (1987); *Therrien* v. *Safeguard Mfg. Co.,* 180 Conn. 91, 94, 429 A.2d 808 (1980); *Brighenti* v. *New Britain Shirt Corporation,* 167 Conn. 403, 406, 356 A.2d 181 (1974); *Corriveau* v. *Jenkins Bros.,* 144 Conn. 383, 387, 132 A.2d 67 (1957)." (Internal quotation marks omitted.) *Coelho* v. *Posi-Seal International, Inc.,* 208 Conn. 106, 111–12, 544 A.2d 170 (1988). Accordingly, to prevail on his wrongful termination claim, "which alleged the existence of an implied agreement between the parties, the plaintiff had the burden of proving by a fair preponderance of the evidence that [the defendant] had agreed, either by words or action or conduct, to undertake [some] form of actual contract commitment to him under which he could not be terminated without just cause [following progressive disciplinary measures]. *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 212 n.2; *Therrien* v. *Safeguard Mfg. Co.,* supra, 94–95." (Internal quotation marks omitted.) Id., 112.

"In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. *Campbell* v. *Gould,* 194 Conn. 35, 41, 478 A.2d 596 (1984). The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness. *Herb* v. *Kerr,* [190 Conn. 136, 139, 459 A.2d 521 (1983)]; *Katsetos* v. *Nolan,* [170 Conn. 637, 656, 368 A.2d 172 (1976)]. This is so because [f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, on the printed record, what factors, if any, could have improperly influenced the jury. *Birgel* v. *Heintz,* 163 Conn. 23, 26, 301 A.2d 249 (1972) . . . . It is the function of this court to determine whether the trial court abused its discretion in denying [a party's] motion. *Mather* v. *Griffin Hospital,* 207 Conn. 125, 139, 540 A.2d 666 (1988).

"Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact. As an inference of fact, it is not reversible [error] unless the [trier of fact] could not reasonably have arrived at the conclusion that it reached. *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981). This process of inference is peculiarly a jury function, the raison d'etre of the jury system. *Pierce* v. *Albanese,* 144 Conn. 241, 256, 129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S. Ct. 36, 2 L. Ed. 2d 21 (1957)." (Internal quotation marks omitted.) *Coelho* v. *Posi-Seal International, Inc.,* supra, 208 Conn. 112–13.

The defendant contends that the statements Bisbee made to the plaintiff were expressions of expectations

about the company's future, and efforts to boost morale among employees. It claims that the comments were not manifestations of a present intention on the part of the company to undertake contractual obligations to the plaintiff. "Weighing the evidence and judging the credibility of the witnesses is the function of the trier of fact and this court will not usurp that role." *Gallo* v. *Gallo,* 184 Conn. 36, 38, 440 A.2d 782 (1981); see *Angelica* v. *Fernandes,* 174 Conn. 534, 535, 391 A.2d 167 (1978). Given the defendant's financial situation, it was not unreasonable for the jury to conclude that Bisbee's encouraging comments intended to confer job security in combination with the manual provisions, gave rise to an implied employment contract.

The defendant argues that the provisions of the personnel manual could not form the basis of an implied agreement between the parties because the plaintiff did not rely on the contents of the manual. Our Supreme Court addressed this claim in *Coelho* v. *Posi-Seal International, Inc.,* supra, 208 Conn. 118. Noting that in *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 199, 520 A.2d 208 (1987), overruled on other grounds in *Curry* v. *Burns,* 225 Conn. 782, 626 A.2d 719 (1993), the court had "declared that 'whether the [employer's] personnel manual gave rise to an express contract between the parties was a question of fact properly to be determined by the jury,' without mention of any separate consideration requirement," the *Coehlo* court held that no separate consideration, such as reliance, is necessary to support a promise not to discharge without cause. *Coehlo* v. *Posi-Seal International, Inc.,* supra, 118. "[T]he only consideration needed to sustain such a contract is the employee's acceptance of employment on such terms." Id. The defendant's contention, therefore, is without merit.

We conclude that, under the circumstances of this case, sufficient evidence was adduced at trial from

which the jury reasonably could have found that the parties had an implied agreement whereby the plaintiff would not be terminated except for cause after implementing the methods outlined in the personnel manual. Therefore, we conclude that the trial court did not abuse its discretion in denying the defendant's motion to set aside the verdict in this regard.

## B

The defendant argues that the finding as to a breach of an implied covenant of good faith and fair dealing should be reversed because an employment contract did not exist. Our resolution of the defendant's first claim is dispositive of that argument.

## C

The defendant next claims that the trial court improperly instructed the jury on awarding damages for future lost earnings, commonly known as "front pay."[2] Therefore, the defendant claims, it was incorrect to refuse to set aside the award for future lost earnings. The plaintiff argues that the defendant did not properly preserve this claim in accordance with Practice Book § 315. We disagree with the plaintiff and, thus, will review the merits of the defendant's claim.

"In order to preserve a claim related to the giving of or failure to give a jury instruction, a party is obligated either to submit a written request to charge covering the matter or to take an exception immediately after the charge is given. See Practice Book

---

[2] "Front pay" has been defined as "an award for a reasonable future period required for the victim to reestablish her rightful place in the job market." *Goss* v. *Exxon Office Systems Co.,* 747 F.2d 885, 889 (3d Cir. 1984). "Back pay" is generally defined as the difference between what the plaintiff could have earned had he not been wrongfully terminated and the amount he actually earned "from the date of his termination until the date of the judgment." *Dunlap-McCuller* v. *Riese Organization,* 980 F.2d 153, 159 (2d Cir. 1992).

§ 315." *Mauro* v. *Yale-New Haven Hospital,* 31 Conn. App. 584, 591, 627 A.2d 443 (1993). Our review of the record indicates that the defendant's request to charge did frame the issue of damages for breach of an employment contract, and can be deemed to have preserved this issue for review because the request, if given, would have cured the defect now claimed in the charge.[3] See *Wasfi* v. *Chaddha,* 218 Conn. 200, 214–15, 588 A.2d 204 (1991); *Giannitti* v. *Stamford,* 25 Conn. App. 67, 72, 593 A.2d 140, cert. denied, 220 Conn. 918, 597 A.2d 333 (1991). Following the trial court's charge in which it instructed the jury that it could award front pay, the defendant excepted to the charge to the extent that it conflicted with its own written proposed charge. We therefore conclude that the defendant complied with Practice Book § 315.

We have never addressed the question of whether front pay is a proper measure of recovery in a wrongful termination action founded on a breach of contract theory. Generally, front pay can be defined as compensation for loss of future earnings.[4] Specifically, the courts commonly define it as "an award for a reasonable future period required for the victim to reestablish her rightful place in the job market." *Goss* v. *Exxon Office Systems Co.,* 747 F.2d 885, 889 (3d Cir. 1984).

The courts have found the authority for granting such relief in § 7 (b) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626 (b) (hereinafter the act). The act provides that " '[i]n any action brought to enforce this chapter the court shall have jurisdiction

---

[3] Our examination of the record indicates that the defendant submitted a proposed jury charge to the court as to the determination of contract damages. The proposed charge did not provide for front pay because it is the defendant's position that front pay is not warranted under either the facts or law in this case.

[4] See *Sasser* v. *Averitt Express, Inc.,* 839 S.W.2d 422, 433 (Tenn. App. 1992).

to grant such *legal or equitable relief as may be appro-priate to effectuate the purposes of this chapter, includ-ing without limitation* judgments compelling employment, reinstatement or promotion, or enforc-ing the liability for amounts deemed to be unpaid mini-mum wages or unpaid overtime compensation under this section.' [29 U.S.C. § 626 (b)].'' (Emphasis in origi-nal.) *Equal Employment Opportunity Commission* v. *Prudential Federal Savings & Loan Assn.,* 763 F.2d 1166, 1171–72 (10th Cir.), cert. denied, 474 U.S. 946, 106 S. Ct. 312, 88 L. Ed. 2d 289 (1985). '' 'The mani-fest purpose of this broad grant of legal and equitable power is to enable the courts to fashion whatever rem-edy is required to fully compensate an employee for the economic injury sustained by him. The power so granted is sufficient to authorize an award of future loss of earnings in appropriate cases. To deny [authority to grant front pay] would defeat a purpose of the Act to make a victim of discrimination ''whole'' and to restore him to the economic position he would have occupied but for the unlawful conduct of his employer. To deny such authority would remove a deterrent force against future violations.' '' Id., 1172, quoting *Koyen* v. *Consolidated Edison Co. of New York, Inc.,* 560 F. Sup. 1161, 1168 (S.D.N.Y. 1983); see also *Maxfield* v. *Sinclair International,* 766 F.2d 788, 795–97 (3d Cir. 1985), cert. denied, 474 U.S. 1057, 106 S. Ct. 796, 88 L. Ed. 2d 773 (1986).

'' 'Front pay' is the term given to the remedy created under federal statutory authority to compensate wrong-fully discharged employees under the [act]. See *Gold-stein* v. *Manhattan Industries, Inc.,* [758 F.2d 1435 (11th Cir. 1985)]; *Davis* v. *Combustion Engineering, Inc.,* [742 F.2d 916 (6th Cir. 1984)]. The remedy has not been granted consistently as some federal courts do not permit a discharged employee to recover front pay under any circumstances. See *Kolb* v. *Goldring,*

*Inc.,* [694 F.2d 869 (1st Cir. 1982)]; *Monroe* v. *Penn-Dixie Cement Corp.,* [335 F. Sup. 231 (N.D. Ga. 1971)]." *Worrell* v. *Multipress, Inc.,* 45 Ohio St. 3d 241, 246, 543 N.E.2d 1277 (1989).[5]

Our review of the decisions that have permitted the award of front pay damages indicates that two lines of cases have emerged: (1) cases in which front pay is awarded only in the statutory context, and (2) a small number of cases in which front pay is confused with "benefit of the bargain" in cases involving wrongful termination of employment based on breach of contract.

The first category is illustrated by the availability of front pay as a remedy under the act and its extension by the federal courts to other federal statutes. See, e.g., *McNeil* v. *Economics Laboratory, Inc.,* 800 F.2d 111 (7th Cir. 1986); *Wildman* v. *Lerner Stores Corp.,* 771 F.2d 605 (1st Cir. 1985); *Equal Employment Opportunity Commission* v. *Prudential Federal Savings & Loan Assn.,* supra, 763 F.2d 1166; *O'Donnell* v. *Georgia Osteopathic Hospital, Inc.,* 748 F.2d 1543 (11th Cir. 1984); *Davis* v. *Combustion Engineering, Inc.,* supra, 742 F.2d 916; *Whittlesey* v. *Union Carbide Corp.,* 742 F.2d 724 (2d Cir. 1984); *Gibson* v. *Mohawk Rubber Co.,* 695 F.2d 1093 (8th Cir. 1982); *Thompson* v. *Sawyer,* 678 F.2d 257 (D.C. Cir. 1982); *Cancellier* v. *Federated Department Stores,* 672 F.2d 1312 (9th Cir.), cert. denied, 459 U.S. 859, 103 S. Ct. 131, 74 L. Ed. 2d 113 (1982); *Wehr* v. *Burroughs Corp.,* 619 F.2d 276 (3d Cir. 1980). Some courts have extended the same logic to

[5] Courts have also permitted front pay recovery in discrimination cases for conduct in violation of Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. See, e.g., *Equal Employment Opportunity Commission* v. *Kallir, Philips, Ross, Inc.,* 420 F. Sup. 919, 926–27 (S.D.N.Y. 1976), aff'd, 559 F.2d 1203 (2d Cir.), cert. denied, 434 U.S. 920, 98 S. Ct. 395, 54 L. Ed. 2d 277 (1977); *United Steel* v. *United States Steel Corp.,* 371 F. Sup. 1045 (N.D. Ala. 1973).

cases involving alleged discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, § 701 et seq., 42 U.S.C. § 2000e et seq. (Title VII). See, e.g., *Equal Employment Opportunity Commission* v. *Kallir, Philips, Ross, Inc.,* 420 F. Sup. 919, 926–27 (S.D.N.Y. 1976), aff'd, 559 F.2d 1203 (2d Cir.), cert. denied, 434 U.S. 920, 98 S. Ct. 395, 54 L. Ed. 2d 277 (1977); *United Steel* v. *United States Steel Corp.,* 371 F. Sup. 1045, 1063 (N.D. Ala. 1973). In such cases, the courts have ruled that front pay does not lend itself to a per se rule[6] and should be granted under limited circumstances: (1) in the court's discretion; (2) in lieu of reinstatement; (3) if not too speculative; and (4) for temporary relief only.[7] See *Cassino* v. *Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1347 (9th Cir. 1987), cert. denied, 484 U.S. 1047, 108 S. Ct. 785, 98 L. Ed. 2d 870 (1988); *Whittlesey* v. *Union Carbide Corp.,* supra, 742 F.2d 728.

The second category, in which injured parties claiming wrongful termination of employment based on breach of contract have been permitted to recover front pay damages, is best exemplified by two cases.[8] In *Wor-*

---

[6] The remedy of front pay "first appeared in 1973 in a Title VII case, *United States* v. *United States Steel Corp.,* [supra, 371 F. Sup. 1045]." *Sasser* v. *Averitt Express, Inc.,* supra, 839 S.W.2d 433 n.10. "It is a special remedy, not necessarily warranted in every case but reserved for only the most egregious circumstances. *Lewis* v. *Federal Prison Industries, Inc.,* 953 F.2d 1277, 1281 (11th Cir. 1992); *Davis* v. *Combustion Engineering, Inc.,* [supra, 742 F.2d 923]. It is not intended to be punitive, *Hansard* v. *Pepsi-Cola Metropolitan Bottling Co.,* [865 F.2d 1461, 1469 (5th Cir. 1989)] or to provide an employee a windfall. *Lewis* v. *Federal Prison Industries, Inc.,* 953 F.2d 1281." *Sasser* v. *Averitt Express, Inc.,* supra, 433.

[7] The Second Circuit Court of Appeals has stated: "[W]e think that front pay is, in limited circumstances, an appropriate remedy under the [act]. It serves a necessary role in making victims of discrimination whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." *Whittlesey* v. *Union Carbide Corp.,* supra, 742 F.2d 729.

[8] These cases may be called the confused, benefit of the bargain, express contract decisions.

*rell* v. *Multipress, Inc.*, supra, 45 Ohio St. 3d 247, the Ohio Supreme Court held that, "as a result of breach of an employment contract where an employee has been wrongfully discharged, front pay, or lost future wages, may be awarded as compensation between the date of discharge and reemployment in a position of equal or similar status." In its determination to award front pay damages, the court observed that the "defendants do not appeal the appellate court's decision regarding the validity of the . . . contract of employment." Id., 243. It then noted that "the usual remedy in breach of contract cases for wrongful discharge is to pay the injured party the difference between any wages due under the contract from the date of discharge until the contract term expires, and that amount is to be reduced by any wages the employee earned in subsequent employment." Id., 246. The court then vaulted from this premise, grounded in a remedy at law for breach of contract, to a discussion of front pay, an "equitable remedy designed to financially compensate employees . . . [which] enables the court to make the injured party whole, although reinstatement is the preferred remedy." Id.

The *Worrell* court's resolution of this dilemma required some measure of judicial legerdemain. The court, citing a series of decisions,[9] all but one of which are federal court cases involving discriminatory terminations based on federal statutes,[10] stirred an equita-

---

[9] See *Worrell* v. *Multipress, Inc.*, supra, 45 Ohio St. 3d 246–47, citing *Hansard* v. *Pepsi-Cola Metropolitan Bottling Co.*, supra, 865 F.2d 1461; *Cassino* v. *Reichhold Chemicals, Inc.*, supra, 817 F.2d 1338; *Maxfield* v. *Sinclair International*, supra, 766 F.2d 788; *O'Donnell* v. *Georgia Osteopathic Hospital, Inc.*, supra, 748 F.2d 1543; *Bailey* v. *Container Corp. of America*, 660 F. Sup. 1048 (S.D. Ohio 1986); *Snow* v. *Pillsbury Co.*, 650 F. Sup. 299 (D. Minn. 1986); *Foit* v. *Suburban Bancorp.*, 549 F. Sup. 264 (D. Md. 1982); *Monroe* v. *Penn-Dixie Cement Corp.*, supra, 335 F. Sup. 231; *Stark* v. *Circle K Corp.*, 230 Mont. 468, 751 P.2d 162 (1988).

[10] Note that one case cited was not an Age Discrimination Act or Title VII case, but based its award of front pay on a state statute that provided

ble remedy with a legal tenet and turned out a succotash. See id., 246–47. We choose not to adopt the analysis of the *Worrell* court, which converts a contract benefit of the bargain case into a statutory front pay case.

Similarly, we reject the reasoning of the court in *Brown* v. *Ford, Bacon & Davis, Utah, Inc.*, 850 F.2d 631 (10th Cir. 1988). In *Brown,* the plaintiff brought suit against her former employer alleging that she was discharged from her accountant position because of her gender and because of her complaint of discriminatory treatment in violation of Title VII. Id., 632. She further claimed that the defendants breached her contract of employment by failing to comply with termination procedures specified in their personnel manual. Id. The United States District Court for the District of Utah found that the employer had not discharged the employee for discriminatory or retaliatory reasons, but had breached the employment contract. Id., 633. On appeal to the Tenth Circuit Court of Appeals, the employee claimed that the District Court findings on her civil rights claims were clearly erroneous and that damages for her contract claim were not properly calculated. Id., 632. The Court of Appeals upheld the District Court as to the factual findings, but "conclude[d], in light of the peculiarities of this case, damages were improperly calculated";[11] id.; and remanded the case, stating that "[i]f [the] plaintiff was discharged for cause . . . [the] defendants breached her contract by failing to afford her the 'progressive discipline' procedures

that " 'damages may be awarded . . . for detriment . . . certain to result in the future.' " *Stark* v. *Circle K Corp.,* 230 Mont. 468, 477, 751 P.2d 162 (1988) (court upheld award of front pay to discharged employee until anticipated retirement, for total of twenty-eight years lost income).

[11] *Brown* involved a seemingly inconsistent finding by the District Court that the plaintiff was terminated from employment both for cause and as a result of a reduction in work force. The Court of Appeals found that the evidence supported that conclusion.

her contract required as a precondition to discharge for cause. [The] [p]laintiff would then be entitled to her accrued salary for the period between her procedurally defective discharge and the time when her employer 'substantially complied' with the required procedures, subject to her duty to properly mitigate." Id., 633. If the plaintiff was discharged on the basis of unsatisfactory job performance, she would be entitled to "reasonable" front pay because of the employer's failure to comply with contractually mandated procedures required as a precondition to discharge for cause. Id., 634, citing *Piacitelli* v. *Southern Utah State College*, 636 P.2d 1063, 1066 (Utah 1981).[12]

We find that the *Brown* court, like the court in *Worrell*, improperly permitted an equitable remedy of front pay damages in a case involving wrongful termination of employment based on breach of contract.

It is important to examine closely what was placed in the agar of the petri dish in which the theory of "front pay" damages germinated and flourished. The act allows a court to grant "legal or equitable relief." The language of *Equal Employment Opportunity Commission* v. *Prudential Federal Savings & Loan Assn.*, supra, 763 F.2d 1171–72, and *Maxfield* v. *Sinclair International*, supra, 766 F.2d 795–97, indicates that the equitable remedy of front pay is recognized to serve the remedial legislative intent of the act. Front pay has been identified as an equitable remedy designed to com-

---

[12] *Brown* v. *Ford, Bacon & Davis, Utah, Inc.*, supra, 850 F.2d 631, has never been cited by another court in a published decision, although cited in unpublished decisions. *Brown* is cited in 82 Am. Jur. 2d 956 n.86, Wrongful Discharge § 248 (1992), for the proposition that "employee dismissed 'for just cause,' but not in compliance with progressive discipline procedures required by contract, may be entitled to reinstatement for the period of time that it would take to substantially comply with those procedures." Id., 955. If actual compliance is impracticable, front pay for the period of time that it would have taken substantially to comply with the procedures is appropriate. Id., 955–56.

pensate employees financially where reinstatement of the employee would be impracticable or inadequate.[13] In such cases, an award of front pay enables the court to make the victim whole, although reinstatement is the preferred remedy.[14]

"The Act provides legal and equitable remedies to eliminate the *unlawful* practices and to restore aggrieved persons to the position where they would have been if the illegal discrimination had not occurred. . . . Consistent with the [act's] purpose of recreating the circumstances that would have existed but for the *illegal* discrimination, aggrieved persons are not entitled to recover damages for the period beyond which they would have been terminated for a non-discriminatory reason." (Citation omitted; emphasis added.) *Gibson* v. *Mohawk Rubber Co.,* supra, 695 F.2d 1097. "[I]n *Loeb* [v. *Textron, Inc.,* 600 F.2d 1003, 1023 (1st Cir. 1979)], the Court noted that court-ordered 'payments in lieu of reinstatement . . . have been relatively small and have been designed to assist [the] plaintiff during the period in which he can be expected to find other employment.' " *Bailey* v. *Container Corp. of America,* 660 F. Sup. 1048, 1054 (S.D. Ohio 1986).[15]

Remedies for a breach of contract, on the other hand, do not include equitable relief except in unusual cases. See *United States Fidelity & Guaranty Co.* v. *Metropolitan Property & Liability Ins. Co.,* 10 Conn. App. 125, 127, 521 A.2d 1048, cert. denied, 203 Conn.

---

[13] "There may be no position available at the time of judgment or the relationship between the parties may have been so damaged by animosity that reinstatement is impracticable. *Whittlesey* v. *Union Carbide Corp.,* [supra, 742 F.2d 728], *Cancellier* v. *Federated Department Stores,* [supra, 672 F.2d 1319]." *Maxfield* v. *Sinclair International,* supra, 766 F.2d 796.

[14] See *Worrell* v. *Multipress, Inc.,* supra, 45 Ohio St. 3d 246.

[15] "[T]he duty to mitigate damages by seeking employment elsewhere significantly limits the amount of front pay available." *Whittlesey* v. *Union Carbide Corp.,* supra, 742 F.2d 728; *Koyen* v. *Consolidated Edison Co. of New York, Inc.,* supra, 560 F. Sup. 1168.

806, 525 A.2d 521 (1987). Moreover, the language of the act defies an award of front pay in wrongful termination cases founded on contract theories in that the conduct of the employer, while wrongful in breaching a contract, is not unlawful. The use of the word "victim" in the definition and purpose of the act indicates that certain employer conduct is illegal. The *Gibson* court speaks of "the [act's] purpose of recreating the circumstances that would have existed but for the *illegal* discrimination . . . ." (Emphasis added.) *Gibson* v. *Mohawk Rubber Co.,* supra, 695 F.2d 1097.

" '[T]he general rule for the measure of damages in contract is that the award should place the injured party in the same position as he would have been in had the contract been performed . . . .' " (Citation omitted.) *Vespoli* v. *Pagliarulo,* 212 Conn. 1, 3, 560 A.2d 980 (1989). When a wrongful termination of a contract is claimed, "the entire damage, both past and prospective, may be recovered in a single action." *Jacobs* v. *Thomas,* 26 Conn. App. 305, 314, 600 A.2d 1378 (1991), cert. denied, 221 Conn. 914, 603 A.2d 404 (1992). The measure of damages is the reasonable compensation for the loss that the plaintiff suffered in being wrongfully deprived of the benefit of the agreement. *Maguire* v. *Kiesel,* 86 Conn. 453, 460, 85 A. 689 (1913).

An award of front pay damages cannot be permitted as a proper measure of recovery in a wrongful termination action founded on a contract theory. Such a result would violate principles of contract damages and would defy common sense.

We conclude that front pay is not a proper measure of contract damages, and we reverse the judgment of the trial court and remand the case for a new trial on the plaintiff's breach of employment contract claim.[16]

---

[16] "We are cognizant of the trend toward remanding a case for a new trial as to liability as well as damages . . . ." *Vezina* v. *Nautilus Pools,*

## D

The defendant's final claim is that there was insufficient evidence to support the punitive damage award. Because we reverse the judgment of the trial court on the count alleging breach of the employment contract and remand the matter for a new trial, we need not consider this claim.

## II

### THE PLAINTIFF'S CROSS APPEAL

## A

The plaintiff first claims that the trial court improperly granted the defendant's motion to set aside the verdict on the counts alleging intentional infliction of emotional distress and negligent misrepresentation. We are unpersuaded.

In considering a motion to set aside a verdict, "the evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable." (Internal quotation marks omitted.) *Frankovitch* v. *Burton,* 185 Conn. 14, 16, 440 A.2d 254 (1981). "[L]itigants have a constitutional right to have factual issues resolved by the jury. . . . This right encompasses the right to have the jury and not the court decide issues of fact as to which reasonable people may reach different conclusions. . . . Thus, the role of the trial court on a motion to set aside the jury's verdict

---

*Inc.,* 27 Conn. App. 810, 823, 610 A.2d 1312 (1992). "The decision to retain the jury verdict on the issue of liability and order a rehearing to determine only the issue of damages should never be made unless the court can *clearly* see that this is the way of doing justice in [a] case. (Emphasis added.) . . . As a rule the issues are interwoven and may not be separated without injustice to one of the parties. . . . Therefore, [a]n order restricting the issues [of a new trial] is the exception, not the rule." (Citations omitted; internal quotation marks omitted.) *Fazio* v. *Brown,* 209 Conn. 450, 455, 551 A.2d 1227 (1988).

is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Citations omitted; internal quotation marks omitted.) *Berry* v. *Loiseau,* 223 Conn. 786, 807–808, 614 A.2d 414 (1992).

In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish four elements: " '(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. *Hiers* v. *Cohen,* 31 Conn. Sup. 305, 329 A.2d 609 (1973); 1 Restatement (Second), Torts § 46.' " *Petyan* v. *Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986), quoting *Murray* v. *Bridgeport Hospital,* 40 Conn. Sup. 56, 62, 480 A.2d 610 (1984).

In granting the defendant's motion to set aside the verdict on the count alleging intentional infliction of emotional distress, the trial court concluded that there was no evidence from which the jury reasonably could have found that the defendant had intended to inflict emotional distress, or knew or should have known that emotional distress was a likely result of its conduct, or that the plaintiff had sustained severe emotional distress.[17] The plaintiff contends that he presented sufficient evidence to establish each of these elements. We disagree.

---

[17] The trial court reasoned: "With reference to the intentional infliction of emotional distress, the court doesn't find sufficient evidence to warrant the jury's verdict, including for the following reasons: There is no evidence that the defendant intended to inflict emotional distress, or that the defendant knew or should have known that his conduct was likely to result in emotional distress. The evidence indicates that the plaintiff—that the defendant

Our review of the record indicates that there was insufficient evidence from which the jury reasonably could have reached the verdict that it did. No evidence was presented from which the jury reasonably could have found that the defendant intended to inflict emotional distress, or that the defendant knew or should have known that emotional distress was a likely result of its conduct. Furthermore, no evidence was presented from which the jury reasonably could have found that the plaintiff had sustained severe emotional distress. Thus, we conclude that the trial court did not abuse its discretion in granting the defendant's motion to set aside the verdict as to the intentional infliction of emotional distress.

"This court has long recognized liability for negligent misrepresentation." *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* supra, 202 Conn. 217. "The governing principles are set forth in . . . § 552 of the Restatement Second of Torts (1979): 'One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.' " Id., 217–18. "[T]he plaintiff need not prove that the representations made by the [defendant] were promissory. It is sufficient . . . that the representations contained false information." Id., 218.

discharged the plaintiff for making an improper statement, and there is no evidence that the defendant intended to cause emotional distress to the plaintiff, or should have known that it was likely to result. Secondly, and probably even more importantly, there is no evidence of severe emotional distress. The plaintiff's testimony was that the discharge was embarrassing and humiliating is not sufficient to indicate emotional distress—severe emotional distress. Therefore, the motion to set aside the verdict is granted as to the intentional infliction of emotional distress."

In granting the defendant's motion to set aside the verdict on the count alleging negligent misrepresentation, the trial court concluded that there was no evidence from which the jury reasonably could have found that the defendant had made a representation that was untrue when made or should have been known to be untrue.[18]

The plaintiff contends that he presented sufficient evidence to establish "an employment relationship, that the Defendant failed to exercise reasonable care and thus supplied false information to the Plaintiff which the Plaintiff justifiably relied on to his detriment." The plaintiff, however, has failed to apprise us of anything in the record, and our search of the record has revealed nothing, to support his contention. No evidence was presented from which the jury reasonably could have found that the defendant had made a representation to the plaintiff that was untrue or should have been known to be untrue. We therefore conclude that the trial court did not abuse its discretion in granting the defendant's motion to set aside the verdict as to negligent misrepresentation.

## B

The plaintiff further claims that the trial court improperly reduced the punitive damage award.

---

[18] The trial court reasoned: "With reference to the verdict of the jury on the issue of negligent misrepresentation, again the court does not find sufficient evidence to warrant the jury's verdict, including for the following reasons: There was no evidence that any statement made by an employee or agent of the defendant upon which the plaintiff relied was untrue when made or should have been known to be untrue. Although the evidence is in dispute, as to the statement at issue made by Mr. Bisbee, with reference to the continued employment of employees of the defendant, even if the plaintiff's version is correct that Bisbee said, 'As long as we do the work and we do it right, we will have jobs,' in the plant. There is no evidence that the statement was untrue when made or Bisbee should have known it was untrue. Therefore, the motion to set aside the verdict as to the negligent misrepresentation count is granted."

Because we reverse the judgment of the trial court on the count alleging breach of the employment contract, we need not consider this claim.

On the defendant's appeal, the judgment is reversed in part and the case is remanded for a new trial; on the plaintiff's appeal, the judgment is affirmed.

In this opinion, SPEAR, J., concurred.

FOTI, J., dissenting. I cannot agree that either an implied or an express contract of employment existed between the parties. The evidence established, at most, an employment for no fixed duration, terminable at will.

The plaintiff alleged in the first count of his complaint the existence of an express and implied in fact employment agreement that comprised a total employment agreement. The defendant denied these allegations. In support of his claim, the plaintiff presented evidence of an oral statement made by Eugene Bisbee, vice president of the defendant, and general manager of the plant where the plaintiff worked. The plaintiff claims that Bisbee told the plaintiff that "if you do your job . . . you're going to have a job here."[1]

The plaintiff also testified that, although he could not recollect when, he had received a copy of the defendant's personnel manual containing all revisions through December 31, 1982, which is five years after he became an employee of the defendant in 1977. The manual expressly stated that it was intended to be simply a guide and a reference.

"It is true that under appropriate circumstances statements in an employee handbook or manual may give rise to an implied contract between an employer

---

[1] The plaintiff concedes that this statement alone cannot support a contract, but rather only lends support for the provisions in the personnel manual that allegedly created an implied employment contract.

and its employee. . . . The mere fact [however,] that the plaintiff believed the guidelines to constitute a contract does not bind [the defendant] without some evidence that it intended to be bound to such a contract." *Christensen* v. *Bic Corp.*, 18 Conn. App. 451, 457–58, 558 A.2d 273 (1989). "It is the plaintiff's burden to prove, by a preponderance of the evidence, that the [defendant] had agreed by either words or deeds to recognize and undertake a contractual commitment . . . ." Id., 454. There was no evidence presented that the plaintiff ever relied on the manual. He consulted it only once for the purpose of determining whether the defendant had a policy dealing with bereavement.

I agree that whether an implied contract of employment existed by virtue of the employer's policies and oral representations is a question of fact for the jury. Statements in an employer's personnel manual may form the basis of a contract between employer and employee. *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 197–99, 520 A.2d 208 (1987), overruled on other grounds in *Curry* v. *Burns*, 225 Conn. 782, 626 A.2d 719 (1993). Such a finding, however, may be made only where the traditional contract requirements are met. *Sivell* v. *Conwed Corp.*, 666 F. Sup. 23, 27 (D. Conn. 1987). Showing that employment was either accepted or continued in reliance on the representation in the manual is such a traditional contract element. See *Coelho* v. *Posi-Seal International, Inc.*, 208 Conn. 106, 118, 544 A.2d 170 (1988).[2] While there is

---

[2] I believe the majority misreads *Coelho* when it concludes that no reliance is required. In *Coelho,* our Supreme Court examined the issue of whether an implied agreement not to discharge without just cause is unenforceable unless supported by some separate consideration. Our Supreme Court held that: "[W]e adopt the position . . . that the absence of a separate consideration does not inevitably invalidate *a contract otherwise expressing an intention that employment not be terminable at will. . . .* Accordingly, we need not decide whether the evidence advanced by the plaintiff of reliance on the promises of the defendant was sufficient to con-

no requirement that the personnel manual mention any separate consideration; *Finley* v. *Aetna Life & Casualty Co.,* supra, 199; "[d]emonstrating that employment was accepted [or continued] in reliance on the representations in the manual is a threshold requirement. [*Sivell* v. *Conwed Corp.,* supra, 666 F. Sup. 27; *Coelho* v. *Posi-Seal International, Inc.,* supra, 208 Conn. 118]." *Cartier* v. *United States Shoe Corp.,* United States District Court, District of Connecticut, Docket No. 91CV-00595 (June 24, 1992) (Dorsey, J.). It is axiomatic that reliance requires more than a mere awareness; there must be a conscious dependence on a contractual term—in this case, the representations contained in the manual.

There was absolutely no evidence of the plaintiff's reliance on the defendant's personnel manual. He had never read it except to see about time off for a death in the family. He did not forgo other job opportunities because of the representations in the manual, nor was he even aware of any "promises" it contained that caused him either to accept or continue his employment.[3] There was no evidence sufficient to constitute

stitute a separate consideration for the agreement not to discharge him simply because of some dispute . . . . This evidence [that the plaintiff had relocated and forgone other job opportunities] fulfilled its function in supporting the plaintiff's version of the terms of the agreement, whether or not it would satisfy the criteria for separate consideration." (Emphasis added.) *Coelho* v. *Posi-Seal International, Inc.,* supra, 208 Conn. 118–19.

In reaching that conclusion, our Supreme Court had already determined that there was sufficient evidence of consideration to find an implied contract of employment between the plaintiff and the defendant. The court merely held that any additional evidence of the specific terms of promises need not rise to the level of separate consideration in order to enforce those promises.

In the present case, I am persuaded that there was insufficient evidence to find an implied contract of employment.

[3] The plaintiff points to his affidavit submitted in objection to the defendant's motion for summary judgment as evidence of his reliance. I note that the affidavit was introduced at trial by the defendant only for the purpose of impeaching the plaintiff, not for substantive purposes. The affidavit could not be relied on by the jury for substantive purposes. See *Kelley* v. *Bonney,* 221 Conn. 549, 564–65, 606 A.2d 693 (1992).

a separate consideration for the agreement alleged by the plaintiff, that is, that he relied on the terms of the personnel manual.[4]

Further, there appears to be no evidence that the plaintiff commenced his employment other than as an at-will employee. The plaintiff claims that Bisbee's statement and the personnel manual established job security to such a level that they created an employment contract. I cannot agree, in the circumstances of this case, that contractual liability arose in the form of an employment contract.

There was no evidence on which the jury reasonably could have found an implied employment contract. No evidence was proffered that would take the employment agreement out of the general rule that "contracts of permanent employment, or for an indefinite term are terminable at will." *D'Ulisse-Cupo* v. *Board of Directors of Notre Dame High School,* 202 Conn. 206, 211 n.1, 520 A.2d 217 (1987); see *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984). I conclude that it was plain error to submit this issue to the jury when, as a matter of law, the evidence was insufficient to support the plaintiff's claim.[5]

The plaintiff's second count alleges a breach of the implied covenant of good faith and fair dealing incidental to the contract. In order to prevail on this claim, the plaintiff, as an at-will employee, must prove that he was terminated for an improper reason and that the

[4] The plaintiff also testified at trial that in his deposition he had indicated that he received the personnel manual only after he had begun his employment with the defendant and that he never read it, but just threw it in his tool box.

[5] Because I have concluded that no reliance has been demonstrated, I find it unnecessary to determine whether the plaintiff sustained his burden of establishing any enforceable contractual language in the manual. See *Carbone* v. *Atlantic Richfield Co.,* 204 Conn. 460, 472, 528 A.2d 1137 (1987).

impropriety of the reason derives from a violation of an important public policy. *Magnan* v. *Anaconda Industries, Inc.,* supra, 193 Conn. 572. "In the absence of a public policy violation, there is no breach of the implied covenant of good faith and fair dealing." *Doherty* v. *Sullivan,* 29 Conn. App. 736, 743, 618 A.2d 56 (1992). The plaintiff has neither claimed nor identified a violation of such a public policy contravened by the defendant, but rather argued that he was not an at-will employee. He cannot prevail on this claim.

Since the contract is one of employment at-will, there can be no recovery for prospective damages, referred to by the parties as front pay or future lost wages and benefits,[6] simply because there could be no expectation for future earnings in such a matter. At most, an at-will employee is entitled to wages only through the date of discharge.

The majority has presented a scholarly analysis of front pay and concluded that no such damages should be allowed in contract actions. I cannot agree to that broad conclusion.[7] While such damages may be disal-

---

[6] See *Preston* v. *Phelps Dodge Copper Products Co.,* 35 Conn. App. 850, 647 A.2d 364 (1994).

[7] The majority seems to rely on semantics in attempting to distinguish "future wage loss," wages that would have been earned under an existing contract of employment, from front pay, a remedy designed to compensate employees where reinstatement would be impractical or inadequate. I cannot reconcile this attempt to distinguish the two terms with the majority's own interchanging of the terms. The majority refers to "future lost earnings, commonly known as 'front pay.' "

I agree that the term "front pay" is reserved to describe that remedy available under the Age Discrimination in Employment Act and other federal statutes. Absent this distinction, not applicable under the facts of this case, I see no practical difference between the remedies afforded under the two different nomenclature. "Front pay" must refer to prospective wages. Accordingly, because it refers to wages after termination, it can be awarded only under a contract of employment as discussed.

In addition, I note that while the majority discusses front pay, the jury was instructed on and the special interrogatories referred to future wage loss. After instructing the jurors that they were not permitted to award

lowed in the present case since the plaintiff became fully employed elsewhere, the generalization that under no circumstances may such prospective damages be allowed in a breach of employment contract is unfounded. If, as the majority concludes, a contract of employment rather than an at-will employment existed, then I would disagree that such damages are not allowable general contract damages.

" 'As a general rule, contract damages are awarded to place the injured party in the same position as he would have been in had the contract been fully performed.' " *Fuessenich* v. *DiNardo,* 195 Conn. 144, 153, 487 A.2d 514 (1985). General contract damages are allowable whenever they arise directly from and as a natural consequence of the breach. *Kay Petroleum Corp.* v. *Piergrossi,* 137 Conn. 620, 624, 79 A.2d 829 (1951). "Prospective damages are recoverable if they are reasonably certain to occur. *Craney* v. *Donovan,* 92 Conn. 236, 245, 102 A. 640 (1917)." *Neiditz* v. *Morton S. Fine & Associates, Inc.,* 2 Conn. App. 322, 328, 479 A.2d 249 (1984), rev'd in part, 199 Conn. 683, 508 A.2d 438 (1986).[8]

speculative damages, the court instructed: "In assessing damages for future losses, you must determine what amount, if any, the plaintiff has proved by the preponderance of the evidence he would receive if he continued in the employment of the defendant for the period in the future you determine he would remain in such employment, less any sums the defendant has proved to you by the preponderance of the evidence that the plaintiff will in reasonable probability be able to receive by the exercise of reasonable diligence during such future period." I point this out not because I find any practical distinction between these terms, but because I believe the majority does so improperly under the circumstances of this case.

[8] The majority itself cites *Jacobs* v. *Thomas,* 26 Conn. App. 305, 314, 600 A.2d 1378 (1991), cert. denied, 221 Conn. 914, 603 A.2d 404 (1992), for the proposition that in contract actions, both past and prospective damages may be recovered. In light of this, I do not understand how the majority reaches the conclusion that the award of front pay, or in this case, future wage loss, "would violate principles of contract damages and would defy common sense." It would seem a greater violation of common sense to deprive a plaintiff of an available remedy based simply on the nomenclature employed occasionally by the parties.

Our Supreme Court has stated that "[t]he normal rule on an employment contract is that when the employee is prevented from fully performing because the employer wrongfully fires him, the employee can recover the wages he *would have earned* under the contract, minus any wages which he has earned or could have earned elsewhere, and the burden of proof of the latter is on the employer. *Carter* v. *Bartek,* 142 Conn. 448, 451–52, 114 A.2d 923 [1955]." (Emphasis added.) *Burns* v. *Gould,* 172 Conn. 210, 221, 374 A.2d 193 (1977). Wages one would have earned under the contract are the equivalent of future wage loss, often called front pay. " 'The injured party is not precluded from recovery . . . to the extent that he has made reasonable but unsuccessful efforts to avoid loss.' " *West Haven Sound Development Corp.* v. *West Haven,* 201 Conn. 305, 332, 514 A.2d 734 (1986). The plaintiff here has, by obtaining employment elsewhere, either avoided or mitigated the loss. Normally, the determination of the extent of mitigation, if any, as it applies to future wage loss, is made by the finder of fact. No such determination is necessary in the present case as I have concluded that the evidence was insufficient to establish that the plaintiff was anything other than an at-will employee.

Because the plaintiff did not demonstrate the existence of a total employment contract, his remaining claims must also fail. The defendant had no duty to comply with the terms of the personnel manual in regards to the plaintiff's at-will employment.

I would, therefore, reverse the judgment and remand the case with direction to set aside the verdict and to render judgment in favor of the defendant.