[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff brought this action in nineteen counts against the Defendants United Technologies Corporation ("UTC") and Larry Dietz ("Dietz"). It involved the Plaintiff's employment and separation from employment at the Pratt Whitney division of UTC. Commencing in 1990, with leave of absence for participation in the 1991 Gulf War, the Plaintiff was employed as an engineer in the Applied Mechanics Department, basically doing ballistics work. At all relevant times Dietz was her immediate supervisor and Thomas Guzofski ("Guzofski") was the Department manager.
During her absence for service during the Gulf War, her employer, through the efforts of Dietz and Guzofski, among other amenities preserved her seniority status and continued her salary in sufficient amount so that along with her service pay, she incurred no loss of earnings. In gratitude, the Plaintiff was instrumental in obtaining the granting of a merit award to Dietz and Guzofski.
Upon her return she resumed her position in the Applied Mechanics Department. The Plaintiff, however, had developed an ailment known as ulcerative colitis. Accordingly, she was out of work on sick leave for three months commencing in October, 1994, and sporadically thereafter.
The Plaintiff protested an assignment involving another function of the Department, and also refused to be examined by her employer's medical department, a request made on April 21, CT Page 4110 1995 because of her repeated absences. Her last day of work at Pratt Whitney was April 21, 1995. Her salary was continued until June 1, 1995, when her resignation became effective.
The trial was bifurcated. The initial part on liability only consumed six trial days, April 7-15, 1999. During the course of the trial, fifteen counts were withdrawn. The four remaining counts, Counts One, Three, Fourteen and Fifteen, were submitted to the jury on April 16, 1999. Counts One and Three claimed gender discrimination respectively under State and federal law, creating a hostile work environment resulting in a constructive discharge. Counts Fourteen and Fifteen claimed infliction of emotional distress respectively by intention and by negligence.
The Defendants filed a written motion for directed verdict at the close of the Plaintiff's case in chief, and orally renewed the motion at the conclusion of the evidentiary portion of the trial. On both occasions the Court reserved ruling on the motion under Practice Book § 16-37.
The jury returned its verdict late in the afternoon of April 16, 1999. The verdict was inconsistent. It was in favor of the Defendants on Counts One and Three; in favor of the Plaintiff against both Defendants on Count Fourteen; and on Count Fifteen against the Defendant UTC but in favor of the Defendant Dietz. The jury was returned to the deliberation room while the Court, outside of the jury's presence, discussed on the record with counsel the ramifications of the inconsistent verdict.
The Court indicated a willingness to resubmit Counts Fourteen and Fifteen to the jury for reconsideration. This was opposed by Plaintiff's counsel who requested in that event that all four counts be so resubmitted. That request was in turn opposed by the Defendants' counsel, who orally moved for judgment under Practice Book § 16-37. Accordingly, the matter was not resubmitted to the jury.
The Court, however, required that the Defendants file a proper written motion to set aside the Plaintiff's verdict and for judgment under Practice Book § 16-37. That motion, together with supporting and opposing memoranda were to be filed by the afternoon of April 19, 1999, with a hearing thereon on the following morning. The motion was filed and the hearing thereon held. CT Page 4111
Practice Book § 16-37 provides the Court with three alternatives if a verdict has been returned. The Court may allow the verdict to stand, or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict was directed.
The rules regarding directed verdicts are well settled and are summarized in Parker v. Shaker Real Estate. Inc.,47 Conn. App. 489, 492-93 (1998). "A directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed. . . . While the direction of a verdict is not favored, it is justified if upon the evidence the jury could not reasonably and legally have reached any other conclusion than that embodied in the verdict as rendered . . . and if, had the verdict been rendered for the other party, the evidence was so weak that it would be proper for the court to set it aside. (Citations omitted.) Id. See also Emerick v. Kuhn, 52 Conn. App. 724, 753-54 (1999).
"The decision to set aside a verdict is a matter within the broad legal discretion of the trial court and will not be disturbed unless there has been a clear abuse of that discretion. . . . The trial court may set aside a jury's verdict only if it finds that the jury could not reasonably and legally have reached their conclusion." (Citations omitted.) Chieffalo v.Norden Systems. Inc., 49 Conn. App. 474, 477-78 (1998).
The Plaintiff claimed that the Defendants sexually harassed her by maintaining a hostile work environment, which caused her to leave Pratt Whitney's employ, and thus constituted a constructive discharge. To establish a claim of hostile work environment, it was incumbent upon the Plaintiff to prove that the workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe to alter the conditions of the Plaintiff's employment and create an abusive working environment. Brittell v. Dept. of Correction,247 Conn. 148, 166-67 (1998); Distasio v. Perkin Elmer Corp., 157 F.3d 55,62 (2d Cir. 1998).
Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit voluntarily. Brittell, supra, 178. Working conditions are intolerable if they are so difficult or unpleasant CT Page 4112 that a reasonable person in the employee's shoes would have felt compelled to resign. Id. Accordingly, a claim of constructive discharge must be supported by more than the employee's subjective opinion that job conditions have become so intolerable that he or she was forced to resign. Id.
The gist of proof of a hostile work environment resulting in constructive discharge is conduct so severe and abusive that it both subjectively and objectively creates intolerable working conditions. The Plaintiff's proffered evidence on these issues primarily concerned alleged statements or actions by Dietz and/or Guzofski, much of which were disputed or contradicted by the testimony of other witnesses. In entering its verdict for the Defendants on Counts One and Three, the jury obviously rejected Plaintiff's claims. At the very least, the verdict implies that Plaintiff had not proved that the Defendants' conduct was sufficiently severe to have created an abusive and intolerable work environment. With this in mind, the Court will review the emotional disturbance verdicts.
 Count Fourteen
Count Fourteen alleges liability for intentional infliction of emotional distress. In order to prevail on this cause of action, a plaintiff must establish four elements. These are "(1) that the [defendant] intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe." DeLaurentis v. New Haven,220 Conn. 225, 267 (1991). "Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort. . . ." Id., quotingHustler Magazine v. Falwell, 485 U.S. 46, 53, 108 S.Ct. 876,99 L.Ed.2d 41 (1988). "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Mellaly v.Eastman Kodak, Co., 42 Conn. Sup. 17, 19 (1991).
Whether a defendant's conduct and the plaintiffs resulting CT Page 4113 distress are sufficient to satisfy these elements" is a question, in the first instance, for the court." Mellaly v. Eastman Kodak,Co., supra, 18. "Only where reasonable minds can differ does it become an issue for the jury." Id.
The Plaintiff's proof on the essential element of outrageous conduct fell far short of that upon which a jury rationally and reasonably could have found for the Plaintiff. Taken most favorably, the proffered evidence could be no more than that rejected by the jury in connection with hostile environment and constructive discharge. In particular only the conduct of Dietz and Guzofski may be considered, as the Plaintiff offered no evidence that any alleged conduct of any non-supervisor co-worker was within the scope of his employment and in furtherance of the employer's business. A-G Foods, Inc. v. Pepperidge Farm, Inc.,216 Conn. 200, 208 (1990).
The conduct of Dietz and Guzofski claimed by the Plaintiff, even if credible, may at best have been annoying, but could not justify a finding that it was conduct "exceeding all bounds usually tolerated by decent society." DeLaurentis v. New Haven,
supra, 267. It nowhere approaches the conduct found insufficient as a matter of law in such cases as Dobrich v. General DynamicsCorp., 1999 U.S. Dist. LEXIS 3623 (D.Conn. 1999); and Matute v.Hyatt Corp., No. 98 Civ. 1712, 1999 U.S. Dist. LEXIS 2873 (S.D. N.Y. 1999).
In addition, although the parties stipulated that the Plaintiff's emotional distress was severe, there was no evidence at all on the elements of intention and causation. See Barry v.Posi-Seal International. Inc., 36 Conn. App. 1, 19-20 (1994). On the contrary, the evidence clearly established that the Plaintiff was suffering from severe emotional distress caused by adversity in her private life. This included her developing an ulcerative colitis condition during her Gulf War service; her divorce in 1992 from her husband, also a Gulf War veteran; and his death from cancer in 1993.
Plaintiff's basic claim was that she did not wish to be transferred to another function of the Applied Mechanics Department. See, e.g., Plaintiff Exhibit 3. A denial of a similar protest by a plaintiff temporarily disabled due to a psychiatric disorder was held, for the purposes of the defendant's summary judgment motion, not to qualify for the essential elements of outrageous conduct and causation. Scandura v. Friendly Ice CreamCT Page 4114Corporation, Docket No. 529109, Superior Court, 1996 W.L. 409337 at 4 (Conn.Super. June 27, 1996, Sullivan, Dorsey, Walsh and Sheldon, Js.). Likewise, it does not so qualify here.
 Count Fifteen
Count Fifteen alleges a claim of negligent infliction of emotional distress. This claim is the counterpart of the Count Fourteen claim of intentional infliction of emotional distress, except that the distress is caused by negligence rather than by intention.
To prove a claim of negligent infliction of emotional distress, the Plaintiff was required to prove by the fair preponderance of the evidence each of the following elements:
(1) That the Defendants' conduct created an unreasonable risk of causing emotional distress;
(2) That the Defendants should have realized that their conduct involved an unreasonable risk of causing emotional distress;
(3) That from the facts known to them at the time of their conduct, they should have realized the distress, if it were caused, might result in illness or bodily harm; and
(4) That the Defendants' conduct actually caused the Plaintiff to suffer emotional distress.
Barrett v. Danbury Hospital, 232 Conn. 242, 261-62 (1995).
The "illness or bodily harm" that might result does not actually have to have occurred, only that it might have occurred.Barrett v. Danbury Hospital, supra, 262-63. Such potential illness or bodily harm, however, must involve more than mere emotional distress. The fear or distress experienced by the Plaintiff must be reasonable in light of the Defendants' conduct. Id. If the fear or distress is unreasonable in light of the Defendants' conduct, the Defendants would not be liable, for they would not have recognized that their conduct could cause this distress. Id.
Negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct CT Page 4115 of the defendant in the termination process. Parsons v. UnitedTechnologies Corp., 243 Conn. 66, 88 (1997). "The mere termination of employment, even where it is wrongful is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress." Id., at 88-89. Accordingly, the Plaintiff had to prove constructive discharge, which she apparently failed to do in connection with Counts One and Three.
The jury returned a Plaintiff's verdict against UTC and Defendant's verdict for Dietz. Recognizing that only the conduct of supervisory employees other than Dietz and Guzofski could be involved; A-G Foods. Inc. v. Pepperidge Farm. Inc., supra; the Plaintiff at oral argument on this motion based this claim on the purported inaction on the part of Yvette Bowden and Ben Matos, then responsible respectively for the Equal Employment Opportunity (EEO) and Human Resources Departments. At the time of trial neither was in UTC's employ, and neither testified at trial.
The Plaintiff testified that she ceased contact with Bowden when she discovered Bowden was an attorney who represented Pratt Whitney in EEO matters. The Plaintiff argued that the corporate Defendant was remiss in having an attorney in this position. This argument is ingenuous, as it implies that an EEO officer should not be versed in the law.
There was nothing at all upon which the jury could find negligent infliction of emotional distress by reason of the conduct of Bowden and/or Matos. Moreover, the Plaintiff withdrew during trial Counts Seven, Eight and Nine which purported to allege specific claims of negligence in this regard, as well as Counts Seventeen, Eighteen and Nineteen, the only [implied] contract counts.
There was nothing demeaning or derogatory in the function to which the Plaintiff was being reassigned, nor was it a demotion. The only evidence was to the contrary. In fact, this function was being performed by a person with a grade rating higher than Plaintiff's. As an at will employee, the Plaintiff's employment could be freely terminated by her employer. Emerick v. Kuhn,
supra, 755. A fortiori with regard to proposed reassignment in this case.
In addition, Plaintiff offered no evidence at all on the essential element that the distress, if caused, might result in CT Page 4116 illness or bodily harm.
 Conclusion
The motion is granted. The verdicts against the Defendants on Count Fourteen and against the Defendant UTC on Count Fifteen are set aside. Judgment may enter in favor of the Defendants on all counts.
David L. Fineberg Superior Court Judge