JAMES BARRY *v.* POSI-SEAL INTERNATIONAL, INC.
(12101)

Foti, Landau and Spear, Js.

Submitted on briefs November 6, 1995—decision released March 12, 1996

*Mark R. Kravitz* and *Ian E. Bjorkman* filed a brief for the appellant-appellee (defendant).

*Thomas B. Wilson, Harry E. Calmar, Matthew E. Auger, Hinda K. Kimmel* and *Susan M. Phillips* filed a brief for the appellee-appellant (plaintiff).

LANDAU, J. This matter is currently before us on remand from our Supreme Court.[1] *Barry* v. *Posi-Seal International, Inc.*, 235 Conn. 901, 664 A.2d 1124 (1995).

---

[1] Petitions for certification were filed by the plaintiff and the defendant and denied on December 12, 1994. *Barry* v. *Posi-Seal International, Inc.*, 231 Conn. 942, 653 A.2d 822 (1994). After the Supreme Court ruling in *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, 234 Conn. 1, 33–34, 662 A.2d 89 (1995), holding that loss of future wages, or "front pay," can be awarded in an action for breach of an employment contract, the court reconsidered and, on July 26, 1995, granted the plaintiff's petition for certification and remanded the matter to this court "for further consideration in light of this court's decision in *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, [supra, 1]." *Barry* v. *Posi-Seal International, Inc.*, 235 Conn. 901, 664 A.2d 1124 (1995).

In this appeal, the defendant claims that the trial court improperly denied the defendant's motions for judgment, notwithstanding the verdict, for a new trial and for remittitur in that (1) there was insufficient evidence to support the plaintiff's front pay damage award, and (2) there was insufficient evidence to support the plaintiff's punitive damage award. In the cross appeal, the plaintiff claims that the trial court improperly reduced his punitive damage award.

The relevant facts regarding the plaintiff's employment history at Posi-Seal and events leading to his termination are included in our original opinion. *Barry* v. *Posi-Seal International, Inc.*, 36 Conn. App. 1, 3, 647 A.2d 1031 (1994), remanded for further consideration, 235 Conn. 901, 664 A.2d 1124 (1995).

I

## FRONT PAY AWARD

The defendant claims that there was insufficient evidence adduced at trial to support the front pay damage award.[2] He argues that the evidence failed to establish that the plaintiff had an expectation of future employment at Posi-Seal, and that the plaintiff failed to prove any actual loss of future earnings because he gained comparable employment following his termination, thereby mitigating any actual damages. In the alternative, the defendant argues that if front pay damages did exist, the evidence was insufficient to support the jury's award of $271,775. He argues that this amount was speculative and excessive because there was little or no evidence to guide the jury in its calculations.

The following additional facts are relevant to this claim. The plaintiff had been employed by the defendant for more than ten years, and was earning an hourly wage

---

[2] In light of the Supreme Court's remand in *Torosyan*, we do not address the defendant's claim as to the existence of an employment contract.

of $11.55 when he was terminated. If he had remained employed at Posi-Seal and received all possible raises, he would have been earning an hourly wage of $13.80 at the time of the trial. Although the plaintiff had considerable seniority at Posi-Seal, his continued employment there was uncertain because Posi-Seal reduced its workforce through layoffs after the plaintiff was fired. Following his discharge in August, 1988, the plaintiff worked for a contractor, except for four months, until January, 1991.[3] He then began working at the Electric Boat Division of General Dynamics Corporation (Electric Boat) where he was earning $14.21 per hour at the time of the trial.

"Evidence is sufficient to sustain a verdict where it induces in the mind of the [trier] that it is more probable than otherwise that the fact in issue is true. . . . It is the province of the trier of fact to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . On appellate review, therefore, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . In analyzing a sufficiency of the evidence claim, the test that we employ is whether, on the basis of the evidence before the jury, a reasonable and properly motivated jury could return the verdict that it did. . . ." (Citations omitted; internal quotation marks omitted.) *Baker* v. *Cordisco*, 37 Conn. App. 515, 528, 657 A.2d 230, cert. denied, 232 Conn. 907, 659 A.2d 1207 (1995).

"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. . . . It has traditionally been

---

[3] The record is devoid of any testimony concerning the plaintiff's wages during this period of time.

held that a party may recover general contract damages for any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself. . . . Thus, [t]he normal rule of an employment contract is that when the employee is prevented from fully performing because the employer wrongfully fires him, the employee can recover the wages he would have earned under the contract, minus any wages which he has earned or could have earned elsewhere, and the burden of proof of the latter is on the employer." (Citations omitted; internal quotation marks omitted.) *Torosyan* v. *Boehringer Ingelheim Pharmaceuticals, Inc.*, supra, 234 Conn. 32–33. Damages for future lost wages "can be awarded in actions for breach of an implied contract of employment, as long as they are limited to a reasonable time and are supported by the evidence." Id., 33–34.

We have already set out in detail the facts that the jury could reasonably have found. The issue that remains to be determined is whether the jury could reasonably have concluded, on the basis of the evidence before it, that the damage attributed to future wage loss-impairment of earning capacity amounted to $271,775. The plaintiff has, by obtaining employment elsewhere, either avoided or mitigated the loss.[4] "Normally, the determination of the extent of mitigation, if any, as it applies to future wage loss, is made by the finder of fact." *Barry* v. *Posi-Seal International, Inc.*, supra, 36 Conn. App. 28 (*Foti, J.*, dissenting).

"Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant. . . . The only practical test to apply to a

---

[4] In his brief, the plaintiff suggests the jury found several facts as to his employment based on the testimony presented to them. A reading of the record fails to show this. Moreover, as to these facts, there is an absence of citations to testimony that would direct us. See Practice Book § 4066 (c).

verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, mistake or corruption. . . . Evidence offered at trial relevant to damages must be reviewed in the light most favorable to sustaining the verdict. . . . Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged . . . and its ruling will not be disturbed unless there is a clear abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Schnabel* v. *Tyler*, 32 Conn. App. 704, 715–16, 630 A.2d 1361 (1993), aff'd, 230 Conn. 735, 646 A.2d 152 (1994). "The size of the verdict alone does not determine whether it is excessive." (Internal quotation marks omitted.) Id., 721.

After a thorough review of the record, we conclude that the award is not supported by the evidence and shocks the sense of justice. The jury awarded damages of $271,775 to the plaintiff for future wage loss-impairment of earning capacity despite the fact that the plaintiff called no witness to testify as to the impairment of his earning capacity. To the contrary, the only evidence in the record regarding his earning capacity was that he earned more money per hour working at Electric Boat at the same type of job than he would have earned at Posi-Seal. Although there were rumors of layoffs at Electric Boat, the plaintiff failed to call any witnesses to testify regarding his job security, or any other matter related to his employment there. At both Posi-Seal and Electric Boat, the plaintiff had insurance benefits and received employer contributions into a pension fund, but he did not call any witness to testify as to the comparative value of the medical, dental, life insurance

and pension benefits he received at Posi-Seal and at Electric Boat.[5]

The plaintiff testified that compared to Posi-Seal, he was entitled to less vacation time and no sick pay at Electric Boat. He also testified that, at the time of trial, he could not work the day shift at Electric Boat as he had at Posi-Seal. There was no testimony, however, as to the value of such differences. We conclude that the evidence presented was insufficient to support any award of damages for future wage loss-impairment of earning capacity, and the front pay award must, therefore, be set aside.

## II

## PUNITIVE DAMAGES

The defendant next claims that the trial court improperly failed to grant its motion notwithstanding the verdict as to the punitive damages award. The plaintiff, in his cross appeal, claims that the trial court improperly reduced the punitive damages award on remittitur. The following additional facts are relevant to these claims. The trial court instructed the jury that punitive damages may be awarded only for malicious and outrageous conduct, that is, actions done with a bad motive or reckless indifference to the interest of others. It further instructed the jury that the amount to be awarded as punitive damages, if any, should be reasonable attorney's fees incurred by the plaintiff. The jury returned a verdict for the plaintiff, awarding him punitive dam-

---

[5] Even if we were to find the differences that the plaintiff claims between the two companies' pension plans could be quantified, he has already received any such differences as part of his back pay award, set out in the jury's interrogatories. The jury was specifically instructed by the trial court to include in Barry's back pay award "any future pension loss you may find he has sustained."

The jury awarded the plaintiff the following damages: $52,275 back pay, $271,775 future wage loss, $42,315 infliction of emotional distress and negligent misrepresentation, and $50,000 punitive damages.

ages of $50,000. After the verdict, the court granted the defendant's motion for a remittitur, and reduced the punitive damages award to $42,017, an amount the court found was equal to the plaintiff's attorney's fees. The plaintiff accepted the remittitur.

We agree with the defendant's claim that the punitive damages award cannot stand in the absence of a verdict in the plaintiff's favor on a cause of action sounding in tort.[6] "Punitive damages are not ordinarily recoverable for breach of contract. Restatement, 1 Contracts § 342; 5 Corbin, Contracts § 1077; McCormick, Damages § 81. This is so because, as lucidly explained by Professor Corbin in the passage cited, punitive or exemplary damages are assessed by way of punishment, and the motivating basis does not usually arise as a result of the ordinary private contract relationship." *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.*, 9 Conn. App. 30, 47–48, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986).

In Connecticut, punitive damages are rarely allowed for breach of contract. The single reported case in which an award of punitive damages for breach of contract was upheld is *L. F. Pace & Sons, Inc.*, a case in which the plaintiff was damaged by the defendant's breach of its implied contract to issue certain surety bonds. Id., 30. In making that decision, we found instructive the California precedent set out in *Grand Sheet Metal Products Co.* v. *Protection Mutual Ins. Co.*, 34 Conn. Sup. 46, 375 A.2d 428 (1977), another case in which the plaintiff claimed injury due to an insurer's failure to perform its obligations under a contract.

In both *L. F. Pace & Sons, Inc.*, and *Grand Sheet Metal Products Co.*, the principles articulated in *Gruenberg* v.

---

[6] The jury returned a verdict in the plaintiff's favor on the counts sounding in intentional infliction of emotional distress and negligent misrepresentation. In our earlier opinion in this case, we held that the trial court correctly

*Aetna Ins. Co.*, 9 Cal. 3d 566, 510 P.2d 1032, 108 Cal. Rptr. 480 (1973), were cited as support for the holding that breach of contract founded on tortious contract may allow the award of punitive damages.[7] In the present case, the plaintiff asks us to extend the allowance of punitive damages for tortious breach of contract from the area of insurance to the termination of employment.

The California courts have previously considered this question. In *Foley* v. *Interactive Data Corp.*, 47 Cal. 3d 654, 765 P.2d 373, 254 Cal. Rptr. 211 (1988), the California Supreme Court overruled a line of California Court of Appeals cases holding that punitive damages could be recovered for a bad faith breach of the implied covenant of good faith and fair dealing in an employment contract.[8] In a detailed and comprehensive analysis, the California Supreme Court reviewed the scholarly commentary on this subject and undertook an examination of policy considerations. It set out the policy considerations behind the allowance of punitive damages for breach of the implied covenant in the insurance context and compared these with the policy considerations that attend the employer-employee relationship.

set aside the verdict on these counts. *Barry* v. *Posi-Seal International, Inc.*, supra, 36 Conn App. 1.

[7] In *Grand Sheet Metal Products Co.* v. *Protection Mutual Ins. Co.*, supra, 34 Conn. Sup. 46, the Superior Court overruled a demurrer to the plaintiff's cause of action for tortious breach of the covenant of good faith and fair dealing that is implied in an insurance contract. We leave for another day the question of whether a separate cause of action, in tort or in contract, ever lies for the breach of an implied covenant of good faith and fair dealing, absent a claim that the breach constitutes a violation of public policy. Cf. *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984) (at-will employee has cause of action in contract for violation of covenant of good faith and fair dealing when termination claimed to be in violation of public policy). No claim of a violation of public policy was made in the present case.

[8] We note that the California Supreme Court has recently acknowledged the continued validity of *Foley* v. *Interactive Data Corp.*, supra, 47 Cal. 3d 654, in *Nedlloyd Lines B. V.* v. *Superior Court*, 3 Cal. 4th 459, 485, 834 P.2d 1148, 11 Cal. Rptr. 2d 330 (1992).

Acknowledging that the insurer and the insured and the employer and the employee enjoy a "special relationship," the California Supreme Court, largely on the basis of the economic differences between the two relationships, was "not convinced that a 'special relationship' analogous to that between insurer and insured should be deemed to exist in the usual employment relationship." Id., 692. The court, therefore, found that damages allowable for breach of the covenant in insurance contracts were not necessarily appropriate in actions for breach of the covenant in employment termination, and it ultimately concluded that the judicial extension of the proposed tort remedies into the employment context was not warranted in view of the traditional separation of tort and contract and the numerous protections against improper terminations already afforded employees.[9]

We find the reasoning in *Foley* persuasive. In particular, we agree with the California Supreme Court that the role of an employer with respect to its employee differs from the role of a "quasi-public" insurance company with respect to the customer to whom it sells protection from harm. The employer does not sell protection to its employee in the same way that an insurer sells protection. Instead, the financial security sought by an employee from the employer is not so very different from the financial security sought by one who enters into an ordinary commercial contract. Just as breach of

---

[9] In this state such protections include, among other things, statutory prohibitions against discharge of employees who report an employer's illegal activities; General Statutes § 31-51m; discharge due to an employee's exercise of first amendment rights as long as the exercise of the rights does not interfere with the employee's work; General Statutes § 31-51q; discharge for exercise of rights under the Workers' Compensation Act; General Statutes § 31-290a; discharge for filing a complaint under the Connecticut Occupational Safety and Health Act; General Statutes § 31-379; and discharge of an employee based on the employee's status as a member of certain protected classes. General Statutes § 46a-60 et seq.

an employment contract can have financial significance for an employee, so, too, breach of an ordinary commercial contract can have vital financial significance to the owner of a business that is dependent on a supplier's goods. We acknowledge that the owner of a business is in a better position than is an employee to bargain each term of the contract, but we cannot say that the difference is so significant that punitive damages should be available as compensation for the breach of one agreement and not for breach of the other.

Furthermore, there is a fundamental distinction between insurance and employment relationships. The interests of the insurer and insured are at odds, payment of a claim benefits the insured and diminishes the resources of the insurer. By contrast, the employer and employee, generally speaking, share the goal of the employer's retaining in its employ good productive workers. It is not in the employer's interest to discharge an employee without cause; if the job must be done, the employer still must pay someone to do it. "This is not to say that there may never be a 'bad motive' for discharge not otherwise covered by law. Nevertheless, in terms of abstract employment relationships as contrasted with abstract insurance relationships, there is less inherent relevant tension between the interests of employers and employees than exists between that of insurers and insureds. Thus the need to place disincentives on an employer's conduct in addition to those already imposed by law[10] simply does not rise to the same level as that created by the conflicting interests at stake in the insurance context." *Foley* v. *Interactive Data Corp.*, supra, 47 Cal. 3d 693.

Consequently, we hold that, at least where there is no allegation or proof that the termination of employ-

---

[10] See, e.g., the statutes referred to in footnote 9.

ment is violative of an important public policy,[11] punitive damages cannot be recovered on a claim that a termination constituted a breach of the implied covenant of good faith and fair dealing contained in an employment contract.[12]

In light of our holding, there is no need to address the plaintiff's claim that the trial court should not have ordered a remittitur with regard to the punitive damages award.

Finally, the defendant has asked us to reconsider on remand the disposition in our original decision ordering a new trial on both liability and damages. We ordered supplemental briefs from the parties on this issue, and we now conclude that a new trial is not necessary. As we originally noted, generally the issues of liability and damages are so interwoven that they may not be separated without injustice to one of the parties and, therefore, if a remand is ordered, the order restricting the issues to be retried is the exception and not the rule. *Fazio* v. *Brown*, 209 Conn. 450, 455, 551 A.2d 1227 (1988). In this case at this juncture, however, we see no reason to order a retrial. The surviving damage award is for back pay only, due to the breach of the implied contract of employment. Neither the defendant nor the plaintiff raised any claim on appeal that the amount awarded for back pay was inappropriate, and there is

[11] Cf. *Magnan* v. *Anaconda Industries, Inc.*, 193 Conn. 558, 479 A.2d 781 (1984); *Battista* v. *United Illuminating Co.*, 10 Conn. App. 486, 523 A.2d 1356, cert. denied, 204 Conn. 803, 525 A.2d 1352 (1987), both cases where the employee, unlike the employee here, was an employee at will.

[12] We are mindful of the Supreme Court's decision in *Triangle Sheet Metal Works, Inc.* v. *Silver*, 154 Conn. 116, 222 A.2d 220 (1966). In that case, which did not involve termination of employment, the Supreme Court acknowledged the evolving law of contract damages that allows recovery of punitive damages if the breach of contract has elements that bring it within the field of tort. The Supreme Court did not uphold the damage award in that case, however, and, as discussed in the text, the principles announced in *Triangle Sheet Metal Works, Inc.*, have been followed only in regards to insurance.

no evidence in this case that the jury's award was a compromise verdict; compare *Murray* v. *Krenz*, 94 Conn. 503, 508–509, 109 A. 859 (1920); or that the jury was in any way confused over the concepts of liability and damages. Compare *Malmberg* v. *Lopez*, 208 Conn. 675, 683, 546 A.2d 264 (1988).

Furthermore, the damage awards that have been set aside, i.e., damages for future lost wages and punitive damages, were clearly separable from the surviving back pay award. The future lost wages award was based on a different time period, and the punitive damages were based on the amount of attorney's fees. Damage awards that were separable from other damages have been set aside without requiring a new hearing in damages. See, e.g., *Kenny* v. *Civil Service Commission*, 197 Conn. 270, 496 A.2d 956 (1985) (back pay award set aside and award for future lost wages reduced; judgment directed in amount of remaining damages); *Lembo* v. *Schlesinger*, 15 Conn. App. 150, 543 A.2d 780 (1988) (punitive damage award set aside and judgment directed in amount of compensatory damages only).

Under the circumstances of this case, we do not think further proceedings in the trial court would serve the interests of justice.

The judgment is reversed with respect to the award of damages for future lost wages and the award of punitive damages, and the case is remanded to the trial court with direction to render judgment for the plaintiff in the amount of $52,275.

In this opinion SPEAR, J., concurred.

FOTI, J., concurring. I remain persuaded that there was insufficient evidence to find an implied contract of employment. See *Barry* v. *Posi-Seal International, Inc.*, 36 Conn. App. 1, 22–28, 647 A.2d 1031 (1994) (*Foti,*

*J.*, dissenting), remanded for further consideration, 235 Conn. 901, 664 A.2d 424 (1995). Because this issue was not addressed by our Supreme Court, our majority opinion on this issue remains the law of the case. I, therefore, concur in this decision.