[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision Relating to Defendant's Motion to Set Aside the Jury Verdicts and any Judgment Rendered Thereon, for Judgment Notwithstanding the Verdicts, for Arrest of theVerdicts, for a New Trial and for Remittitur.
This memorandum addresses remaining defendant CT Page 4010-YYY Chesebrough-Ponds' February 14, 1996, post-trial motions.
I have reviewed all of the lengthy memoranda submitted by plaintiff and defendant and considered carefully all of the arguments put forth. Defendant's claims are numerous and raise many significant and important issues in this difficult and energetically contested case. Moreover, after the jury's verdicts were returned, on March 12, 1996, the Appellate Court issued its decision in the case of Barry v. Posi-SealInternational, Inc., 40 Conn. App. 577, which has direct application to the issues presented in this case.
Most of the claims being made by defendant were raised during the trial; many were ruled upon following extensive argument. Additional argument was held again on April 12, 1996. Additional briefs were submitted by May 3, 1996. To the extent that defendant's claims have already been ruled upon during the trial, I hereby incorporate by reference all such rulings. This memorandum is therefore intended to supplement, not supplant, all rulings previously made.
For the reasons stated below and reasons stated during the trial, all of defendant's motions but two are denied. Defendant's motion to set aside the jury's award of damages for emotional distress is granted. In light of Barry v.Posi-Seal International, Inc., defendant's objection to an award of punitive damages is also sustained. For ease of reference, in ruling, I will generally track the arguments in the order in which they are put forth by Chesebrough-Ponds in its February 14, 1996, post-trial motion.
I. Standard of Review
I begin by noting that Chesebrough-Ponds continues to argue vociferously that the jury's verdict is unjust. This is a continuation of the claim made by Chesebrough-Ponds throughout the entire case that Mai Langewisch's claims were utterly without merit.
As plaintiff notes, in order to have a jury verdict set aside, the moving party must prove that "reasoning minds" could not possibly have decided as the jury did. Tomczuk v.Alvarez, 184 Conn. 182 (1981). The movant must show that the amount of the verdict "so shocks the sense of justice as to compel the conclusion that the jury were influenced by CT Page 4010-ZZZ partiality, prejudice, mistake or corruption." Birgel v.Heintz, 163 Conn. 23, 28 (1972). In reviewing such a motion, the court must give the evidence a construction "most favorable to sustaining the jury's verdict."
As our Supreme Court noted in Berry v. Loiseau, 223 Conn. 786,807-08 (1992):
 We have stated that `litigants have a constitutional right to have factual issues resolved by the jury.' Mather v. Griffin Hospital, 207 Conn. 125, 128, 540 A.2d 666 (1988). This right encompasses the right to have the jury and not the court decide issues of fact as to which reasonable people may reach different conclusions. Id. Thus, the role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict it did.
Defendant argues in essence that any jury's ability to analyze dispassionately cases of this sort are necessarily overwhelmed by sympathy for the plaintiff. One obvious response is that the extensive voir dire process undertaken in this case provided substantial protection against the possibility that Chesebrough-Ponds would be judged by jurors unable to be absolutely fair and neutral in their deliberations and decisions. In any event, I observed nothing whatever during the trial that would lead me to conclude that the jury did anything other than what it was instructed to do: fairly and without any predispositions analyze the evidence without fear or favor, evaluate the credibility of all of the witnesses, and render a just verdict in accord with the instructions on the law. The record will reveal that somewhat heated and emotional appeals were made by both sides during the trial, not only plaintiff's counsel. These arguments commenced in the opening statements and were repeated in the closings.
Moreover, in this case, there is clear evidence in the record that the jury carefully considered and evaluated the conflicting claims of the parties based on the evidence produced during the trial. By its careful attentiveness CT Page 4010-AAAA during the trial; by its questions concerning the law during its deliberations; by its responses to the jury interrogatories; and by its arriving at widely differing sums in the damage portion of its verdict, the jury indicated that it did its job thoughtfully and with discretion.
In light of some of defendant's claims of error — particularly the claim that plaintiff's counsel was excessively permitted to lead plaintiff while questioning her, discussed below — I feel obliged to express my view that the cold trial transcript, when it is reviewed, will not fully reveal the unusual difficulty plaintiff had in communicating during the trial. This difficulty extended not only to her dealings with defendants, but also with her own counsel. The difficulty may be attributed, in part, to language issues or comprehension problems or to other factors not readily apparent and not revealed on the record. This difficulty was enhanced by the inherent awkwardness which use of a translator often entails. In my view, this extraordinary difficulty in communicating created a situation in which, even more than in the usual case, the jury was required to rely upon its collective common sense, life experience and intuition, along with its collective analytical skills, to decide what had occurred and evaluate witness credibility. For that reason, in my view, the general principle that a jury's evaluation of witness credibility must be respected deserves particular deference given the somewhat unusual scenario presented here. Whether plaintiff — as well as any other witness — was being forthcoming or evasive, honest or deceitful, and whether her testimony deserved to be believed in whole or in part was for the jury to decide and its decision, if supported by the evidence, is entitled to heavy weight. The language of Lampev. Simpson, 106 Conn. 356, 358 (1927), is quite apropos:
 The plaintiff is a German, three years in America, and spoke so little English that he testified through an interpreter. The record shows that the witness had frequent difficulty in understanding the questions as translated by both of the two interpreters who were used, and the second, who was serving during the cross-examination and re-direct, later testified that the plaintiff spoke Platt Deutch, a different German dialect from that spoken by the interpreter.
CT Page 4010-BBBB
 The inconsistent answers above-mentioned, together with the frequently recurring difficulties as to translation, give the impression, upon a mere reading of the record, that lack of understanding between witness and interpreter may well have been responsible for the seeming contradictions. The jury and the trial court were in a much more advantageous situation to determine which answers were credible and which mistaken or misunderstood, and their respective conclusions, as evidenced by the verdict, rendered under adequate instructions, and the refusal to set it aside, are not to be lightly disregarded.
Jury's Damage Awards
The issue is not whether the court would have awarded more or less. The issue, rather, is whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large to offend the sense of justice and compel a conclusion that the jury was influenced by partiality, prejudice or mistake. Buckman v.People Express, Inc., 205 Conn. 166, 175 (1987). I have reviewed the arguments made by counsel and conclude that the verdicts do not offend the sense of justice and that they were fair, just and reasonable under all of the circumstances. I have also concluded that, with one exception, the jury had a basis in the evidence to make the damage awards which were in fact made. Determining precise amounts of damage is a difficult task and defies neat, tidy formulas. Mathematical exactitude is not required in proving damages, as long as there is a basis in the evidence for an award. Hassane v.Lawrence, 31 Conn. App. 723, 727 (1993). The jury was instructed that it was not permitted to speculate in arriving at an award, that plaintiff shouldered the burden of proof, and that any award of damages must be fair, just and reasonable. The jury verdicts followed careful deliberation and completion of the interrogatories submitted to the jury. I conclude that there is sufficient evidence to support the verdicts, with the one exception noted.
Having considered the matter, I conclude that the award of emotional distress damages must be set aside. In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish four elements. Barry v.CT Page 4010-CCCCPosi-Seal International, Inc., 36 Conn. App. 1, 19 (1994). One of these elements is that the emotional distress sustained by the plaintiff must be severe.
In this case, as plaintiff notes at pages 5-6 of her memorandum of March 25, 1996, she felt angry and sad as a consequence of what had occurred. But there was insufficient evidence plaintiff sustained severe emotional distress. This is in no way to minimize the traumatizing effects on any employee who is terminated. They are very real and palpable. It is simply to say that I have concluded that in this area alone, the evidence does not support the jury's verdict in light of the clear requirement that a plaintiff must show the emotional distress to be severe.
I therefore conclude that the award of emotional distress damages must be set aside.
Jury's Verdicts on All Counts
I have concluded that the jury's verdicts were supported by the evidence on all four counts.
With specific reference to Count Four, the national origin discrimination count, I would note that plaintiff testified in a manner which provided the jury with a basis to conclude that Mr. Wilson had used ethnic slurs in communications with her.[1] This testimony, and indeed, all of the evidence, was clearly subject to varying interpretations and the jury was free to evaluate the evidence as it saw fit.
Limitation of Inquiry Regarding Plaintiff's Subsequent Employment.
I incorporate by reference the ruling made during trial on this issue. To have permitted detailed inquiry into plaintiff's subsequent employment history as requested by defendant would have necessitated undue delay as well as a "trial within a trial" on collateral issues.
Use of Translator and Limitation of Inquiry Into DiscussionWith Translator.
I incorporate by reference my rulings during trial.
Following significant voir dire, I concluded that the CT Page 4010-DDDD interpreter was qualified. Cf. Lepri v. Town of Branford,152 Conn. 210 (1934); State v. Noyes, 36 Conn. 80, 81 (1869). I believe the record supports my conclusion. Under the circumstances of this case, I concluded that the assistance of an interpreter was required. I also interrogated the interpreter to gain her assurance that she would fairly and accurately interpret. I believe that to have prevented the translator from interpreting in this case would have significantly prevented plaintiff from presenting her case, given all of the circumstances present and the apparent dearth of qualified Vietnamese interpreters. See 75 Am.Jur.2d, Trial, Sections 233 — 234.
The facts as presented during trial led me to conclude that the presence of the translator was necessary to assist plaintiff's counsel prepare for trial, and that the translator assisted under circumstances that created in counsel, plaintiff, and the translator a reasonable expectation that communications would be private and privileged. See General Statutes Section 52-1461. See also State v. Gordon, 197 Conn. 413,423-24 (1985); State v. Cascone, 195 Conn. 183, 186-87
n. 3 (1985); Goddard v. Gardner, 28 Conn. 172, 175-76 (1859). To have permitted defendant to examine the interpreter as a fact witness under the circumstances of this case — particularly in light of the significant communication problems outlined above — would have permitted the attorney-client relationship between plaintiff and her counsel to have been seriously compromised. There was no basis in the record for me to have concluded that plaintiff waived her privilege.
Limitation of Inquiry Into the Contact Between Plaintiff andHer Counsel Regarding the May 21, 1993, Letter.
I incorporate by reference my ruling at trial. Goddard v.Gardner, 28 Conn. 172, 174 (1859).
Limitation on Use By Defendant of Plaintiff's Deposition
I incorporate by reference my ruling during trial.
Allowing Plaintiff To Respond to Leading Questions
Given the above-described difficulties plaintiff had in communicating, it was unavoidable and necessary to permit plaintiff's counsel significant latitude in questioning CT Page 4010-EEEE plaintiff. In my view, this latitude was necessary to ensure that the trial could proceed in a reasonable manner. See Tait and LaPlante's Handbook of Connecticut Evidence, Section 7.12.2(d) (2d Edition 1988).
Preventing Defendant From Advising the Jury that Plaintiff HadWithdrawn the Case Against Robert T. Wilson
I incorporate by reference the ruling made during trial.
Alleged Errors in Jury Charges
Defendant's claims were argued during trial and rejected. I incorporate by reference all rulings made during trial. I would note that the charges given during both phases were modelled in large part on the requests to charge submitted by defendants and were the product of extensive collaboration and discussion between myself and counsel.
Attorney's Fees And Costs
Plaintiff argues that attorney's fees should be granted pursuant to General Statutes Section 46a-104 in light of the jury's verdict as to Count Four (National Origin Discrimination) and Count Five (Retaliation). Such an award is remedial in purpose. See Bridgeport Hospital v. CHRO,232 Conn. 91 (1995); and State v. CHRO, 211 Conn. 464, 484
(1989). I agree that given the circumstances of this case, denying plaintiff an award of attorney's fees would be to deny her the full remedy to which she is entitled.
The fee agreement provides that attorney's fees shall be one-third of all compensatory damages. Having set aside the $50,000 award for emotional distress, I compute the compensatory damages to be $281,185. Therefore, attorney's fees are awarded in the amount of $93,728. This amount is, in my view, reasonable in light of the significant factual and legal issues involved in this case.
Plaintiff's Request for costs is disputed. The parties are ordered to attempt to reach an agreement, if possible, on the bill of costs submitted by plaintiff. Normally, when costs are contested, the clerk initially makes a determination, which, if disputed, is appealed to the judge. If costs are appealed, a hearing will be held in due course if CT Page 4010-FFFF requested.
Punitive Damages
Prior to deliberating in the first phase of the trial, the jury was instructed on the law as to Count Two, alleging that defendants had breached an implied covenant of good faith and fair dealing. My notes indicate that the jury was instructed that:
 A contract is an agreement between parties. Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement. Bad faith in general implies both `actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive.' Bad faith means more than mere negligence; it involves a dishonest purpose.
This language was based in part on the case of Habetz v.Condon, 224 Conn. 231, 237 (1992).
In its response to Interrogatory 3, the jury checked the "yes" box in its answer to the question "Did Chesebrough-Ponds materially breach the implied covenant of good faith and fair dealing?"
In phase two of its deliberations as to damages, my notes indicate that the jury was instructed as follows with respect to the issue of punitive damages:
 Mai Langewisch has also made a claim in this case for what are known as exemplary or punitive damages in connection with Count Two — which, as you will recall, relates to the breach of the covenant of good faith.
 The law permits you to find that punitive damages should be awarded to a plaintiff in order to punish a defendant for extraordinary misconduct CT Page 4010-GGGG and to serve as an example to others not to engage in such conduct. In order to recover punitive damages, a plaintiff must prove that the wrongful conduct involved arose from ill will or malice towards her, or from some improper or unjustifiable motive or intent, or in bad faith, and with a reckless indifference toward her.
 You of course remember that you found in stage one of this case that the discipline and discharge of Mai Langewisch by the defendant were in bad faith and were motivated by discrimination against her because of her Vietnamese origin. Because of this finding, punitive damages may be awarded.
 Whether or not an award of punitive damages would be appropriate in this case is a matter solely within your discretion, based on all the facts and circumstances of the case.
 If you find that punitive damages are appropriate, please just put a check on the "yes" line on the verdict form in the appropriate place; if you determine they are not available, put a check on the "no" line.
 Please note: You are only being asked to decide whether or not punitive damages are appropriate in this case. You are not being asked to determine a specific amount of any such punitive damages. If you decide that punitive damages are appropriate, the court will fix the amount. So do not concern yourself with amounts on this issue.
On the verdict form for phase two, the jury checked the "yes" box indicating that the jury wanted punitive damages to be awarded.
Following the verdicts in this case, however, the Appellate Court decided the case of Barry v. Posi-Seal,40 Conn. App. 577 (1996). Defendants assert that punitive damages may not be awarded in light of the Appellate Court's ruling in this case. I agree.
In Barry v. Posi-Seal, the Appellate Court states flatly CT Page 4010-HHHH that "we agree with the defendant's claim that the punitive damages award cannot stand in the absence of a verdict in the plaintiff's favor on a cause of action sounding in tort."Id., 584. The verdict on Count Two, upon which the award of punitive damages is based, related to a breach of contract claim. Consequently, an award of punitive damages cannot stand and cannot be made.[2]
With the two exceptions noted above relative to emotional distress damages and punitive damages, all of defendant's post-trial motions are hereby denied.
Douglas S. Lavine Judge, Superior Court